# Illinois Official Reports

## Appellate Court

---

### *City of Chicago v. Elm State Property LLC*, 2016 IL App (1st) 152552

---

| | |
|---|---|
| Appellate Court Caption | THE CITY OF CHICAGO, a Municipal Corporation, Through Its Department of Finance, Plaintiff-Appellee, v. ELM STATE PROPERTY LLC, and THE CITY OF CHICAGO DEPARTMENT OF ADMINISTRATIVE HEARINGS, Defendants-Appellants. —THE CITY OF CHICAGO, a Municipal Corporation, Through Its Department of Finance, Plaintiff-Appellee, v. HALSTED WEST, LLC, and THE CITY OF CHICAGO DEPARTMENT OF ADMINISTRATIVE HEARINGS, Defendants-Appellants. |
| District & No. | First District, Fourth Division<br>Docket Nos. 1-15-2552, 1-15-2553 cons. |
| Filed | December 22, 2016 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, Nos. 14-L-50273, 14-L-50274; the Hon. Carl A. Walker, Judge, presiding. |
| Judgment | Circuit court reversed; administrative decision reinstated. |
| Counsel on Appeal | Kimberly A. Jansen and Joshua G. Vincent, of Hinshaw & Culbertson LLP, of Chicago, for appellants.<br><br>Stephen R. Patton, Corporation Counsel, of Chicago (Benna Ruth Solomon, Myriam Zreczny Kasper, and Stephen G. Collins, Assistant Corporation Counsel, of counsel), for appellee. |

Christopher W. Carmichael and Darren H. Goodson, of Holland & Knight LLP, and J. Timothy Eaton and Kim R. Walberg, of Taft Stettinius & Hollister LLP, both of Chicago, for *amicus curiae*.

Panel  JUSTICE HOWSE delivered the judgment of the court, with opinion. Presiding Justice Ellis and Justice Burke concurred in the judgment and opinion.

## OPINION

¶ 1  The city of Chicago has imposed a tax "upon the privilege of transferring title to, or beneficial interest in, real property located in the city," known as the City of Chicago Real Property Transfer Tax Ordinance (transfer tax). Chicago Municipal Code § 3-33-010 (added Dec. 15, 1992). In this case, defendants Elm State Property LLC (Elm State Property) and Halsted West, LLC (Halsted West), purchased loans and were assigned mortgages to real estate located in Chicago. At the time the defendants acquired the mortgages, the mortgagors were in default. Defendants later acquired deeds in lieu of foreclosure to those properties from the mortgagors. The city subsequently assessed a tax on the assignments of the mortgages, alleging that an assignment of a mortgage was an assignment of a beneficial interest in real property under the tax ordinance and subject to the transfer tax. The defendants protested the assessments and an administrative law judge (ALJ) vacated the tax assessment, ruling that the mortgage assignments did not transfer a beneficial interest in real property. On petition for writ of *certiorari* filed by the city, the circuit court reversed the decision of the ALJ, and the defendants filed this appeal. The issue presented in this case is whether the assignment of a mortgage on Chicago real estate can be taxed as an assignment of a beneficial interest in real property under the transfer tax ordinance. For the following reasons we find that an assignment of a mortgage is not subject to the Chicago real estate transfer tax as an assignment of a beneficial interest in real property. Therefore, we reinstate the administrative decision and reverse the decision of the circuit court.

¶ 2  BACKGROUND

¶ 3  The city seeks to impose a tax, under provisions of the transfer tax ordinance, on assignments of mortgages to both defendants. Chicago Municipal Code § 3-33-010 (added Dec. 15, 1992). The city argues that the assignment of a mortgage constitutes an assignment of a beneficial interest. Section 3-33-030(A) of the Chicago Municipal Code (Code) states: "Except as otherwise provided in this chapter, a tax is imposed upon the privilege of transferring title to, or beneficial interest in, real property located in the city ***." Chicago Municipal Code § 3-33-030(A) (amended Nov. 16, 2011). According to the Code:

"A. 'Beneficial interest in real property' includes, but is not limited to:

(1) The beneficial interest in an Illinois land trust;

(2) The lessee interest in a ground lease (including any interest of the lessee in the related improvements) that provides for a term of 30 years or more when all options to renew or extend are included, whether or not any portion of the term has expired; or

(3) The indirect interest in real property as reflected by a controlling interest in a real estate entity." Chicago Municipal Code § 3-33-020(A) (amended May 8, 2013).

Defendants alleged that a mortgage is not a beneficial interest under the ordinance and filed this appeal from the decision of the circuit court. The relevant history of the transactions in this appeal are described below.

¶ 4                                    Halsted Property

¶ 5     On June 7, 2007, 1950 North Halsted LLC (North Halsted), along with a trustee, entered into a mortgage loan purchase and sale agreement with National City Bank (now PNC Bank). North Halsted financed the purchase by taking out a loan in the amount of $5,322,500, which was secured by a mortgage on the property. The mortgage provided that in the event of default, the mortgagee could initiate foreclosure proceedings and would have the right, "to the extent permitted by law, to collect and receive all rents." North Halsted subsequently went into default on its mortgage obligations. On December 28, 2009, PNC Bank sold that loan and assigned the mortgage securing the loan to defendant, Halsted West, for $4 million. The assignment of the mortgage was recorded on January 5, 2010. Later, on March 29, 2010, the mortgagor executed a deed in lieu of foreclosure (DIL) transferring title of the mortgaged property to Halsted West. Halsted West and the mortgagor jointly filed a property transfer tax declaration when they recorded the documents with the recorder of deeds indicating that the transaction was exempt from taxation under section 3-33-060(M) of the Code, which exempts deeds filed in lieu of foreclosure from the tax.

¶ 6     On January 20, 2011, the city of Chicago sent a notice to Halsted West for unpaid taxes. This initial tax assessment listed a total amount due of $78,109.07, including interest and penalties, for the transaction dated March 29, 2010, the same day the DIL was recorded. On April 18, 2011, Halsted West paid and protested the tax assessment. The protest triggered a hearing before the city of Chicago's department of administrative hearings (DOAH). The ALJ ruled in favor of Halsted West and found that the assignment of the mortgage and other loan documents did not convey a beneficial interest in real property, that the tax was not assessed on the assignment but only on the deed in lieu of foreclosure, and that the transfer of the DIL was covered by exemption M of the ordinance. Chicago Municipal Code § 3-33-060(M) (amended May 8, 2013). The city appealed the decision of the ALJ to the circuit court on petition for writ of *certiorari*.

¶ 7                                    Elm State Property

¶ 8     Elm State LLC took out a loan from Suburban Bank & Trust Company (Suburban Bank) in 2006 for $10.5 million, which was secured by a mortgage on the property at 1149-59 North State Street in Chicago. Elm State LLC also executed an assignment of rents providing that in the event of default, the lender has the right to collect rents but must "apply the net proceeds, over and above the lender's costs, against the indebtedness." Further, if the mortgagee chooses to take possession, under the terms of the assignment of rents, the mortgagee has "the power to

protect and preserve the property, to operate the property preceding foreclosure or sale, and to collect the rents from the property and apply the proceeds, over and above cost of the receivership, against the indebtedness." The parties modified the mortgage a year later to include a property at 6-10 East Elm Street. Elm State LLC subsequently defaulted on the loan.

¶ 9    In 2009, Suburban Bank agreed to sell to defendant, Elm State Property, "all of Suburban's right, title, and interest in the Elm State Loan" for $8.25 million. As part of the sale of the loan, Suburban Bank agreed to assign to Elm State Property the related loan documents. On December 23, 2009, Suburban Bank assigned the Elm State LLC loan documents (which included the mortgage, modification of mortgage, assignment of rents, promissory note, commercial guarantees, lender's title insurance policy, and the rights to the collateral) to Elm State Property. On April 27, 2010, Elm State LLC executed a DIL, transferring ownership of the mortgaged property to defendant Elm State Property.

¶ 10    On May 26, 2010, the city sent Elm State Property a tax assessment for the April 27, 2010, transaction for an amount of $103,125.82, including interest and penalties. Elm State Property filed a protest against this tax assessment on June 28, 2010, arguing that the DIL transfer was exempt from taxation under exemption C and exemption M of the transfer tax ordinance. Chicago Municipal Code § 3-33-060(C), (M) (amended May 8, 2013). Hearings were scheduled before the DOAH. The city then filed an amended tax assessment on June 5, 2013, indicating a total tax due of $105,906.27 for a transaction dated December 31, 2009.

¶ 11    In the proceedings in the DOAH, the ALJ found that Elm State Property was not liable for the tax assessment because the assignment of a mortgage does not convey a beneficial interest in the first place and that, even if it did, the assignment properly falls under exemption C. Chicago Municipal Code § 3-33-060(C) (amended May 8, 2013). The ALJ noted how the tax assessment listed the incorrect date of the DIL transaction and found that this also rendered the tax assessment fatally defective.

¶ 12                              Proceedings in the Circuit Court

¶ 13    The city appealed the decision of the ALJ on petition for writ of *certiorari*, and both defendants' cases were consolidated before the circuit court. Also consolidated with the case was a complaint for declaratory judgment filed by Halsted West, alleging that the transfer of the DIL was exempt from taxation under exemption M. Chicago Municipal Code § 3-33-060(M) (amended May 8, 2013). The complaint for declaratory judgment was consolidated for hearing with the petitions of *certiorari*. The complaint for declaratory judgment alleged that after Halsted West recorded its DIL, the city comptroller adopted a tax ruling providing that the exemptions for a DIL would only apply if the transferee was a "bona fide mortgagee" or "bona fide secured creditor." In Halsted West's complaint for declaratory judgment, it argued that the application of the ruling to the transfer tax ordinance, made after its transaction, could not be retroactively applied because the council did not state the tax should apply retroactively. The trial court held that the ruling could not be retroactively applied.

¶ 14    Despite finding that the ruling could not be retroactively applied, the circuit court reversed the decision of the ALJ and reinstated the tax. The court found that the Chicago transfer tax applies to mortgages because a mortgage conveys a beneficial interest in real property and the transactions did not fall under any applicable exemption. The court found that to read the ordinance otherwise would render exemptions C and G (Chicago Municipal Code

§ 3-33-060(C), (G) (amended May 8, 2013)) superfluous because the exemptions include mortgage assignments. Additionally, the trial court held the assignments did not fall under any applicable exemption.

¶ 15 Both parties filed a notice of appeal from the trial court's judgment. No appeal was taken from the declaratory judgment, and therefore the only issues in this appeal are whether the assignments of mortgages constituted transfers of beneficial interests in real property and whether the assignments fall under an exemption even if they do transfer a beneficial interest.

¶ 16 ANALYSIS

¶ 17 Though this case comes before us under writ of *certiorari* and not the Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West 2014)), "[t]he standards of review under a common law writ of *certiorari* are essentially the same as those under the Administrative Review Law." *Hanrahan v. Williams*, 174 Ill. 2d 268, 272 (1996). In cases following review of an administrative decision, this court reviews the decision of the ALJ rather than the decision of the circuit court. *Chicago Bears Football Club v. Cook County Department of Revenue*, 2014 IL App (1st) 122892, ¶ 22. "[W]hether the question presented is one of fact, one of law, or a mixed question of law and fact," determines the applicable standard of review. *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 390 (2001). Issues of statutory construction are questions of law, not fact, which this court reviews *de novo*. *Chicago Bears Football Club*, 2014 IL App (1st) 122892, ¶ 25. Because the interpretation of the term "beneficial interest in real property" is at issue, that matter is a question of law and therefore merits *de novo* review.

¶ 18 Though this court is interpreting a municipal ordinance, the rules governing statutory interpretation apply equally to ordinances. *DTCT, Inc. v. City of Chicago Department of Revenue*, 407 Ill. App. 3d 945, 949 (2011). This court will interpret a statute based on its plain meaning without resorting to canons of construction if the statute is not ambiguous. *Department of Transportation v. Singh*, 393 Ill. App. 3d 458, 465 (2009) (" 'Where the text of the statute is clear and unambiguous, there is no need to resort to canons of construction ***.' " (quoting *People v. Burke*, 362 Ill. App. 3d 99, 105 (2005))). Looking to the language of the statute, this court need not utilize canons of construction if the language is clear (*In re Marriage of Logston*, 103 Ill. 2d 266, 277 (1984)) and should interpret the words with their popularly understood meaning. *Kozak v. Retirement Board of the Firemen's Annuity & Benefit Fund*, 95 Ill. 2d 211, 215 (1983). "When the language of a statute is plain and unambiguous, courts may not read in exceptions, limitations, or other conditions." *In re D.D.*, 196 Ill. 2d 405, 419 (2001) (citing *People v. Lavallier*, 187 Ill. 2d 464 (1999), and *People v. Daniels*, 172 Ill. 2d 154 (1996)). "A statute is ambiguous when it is capable of being understood by reasonably well-informed persons in two or more different senses." *People v. Jameson*, 162 Ill. 2d 282, 288 (1994). Hence, "where more than one construction is apparent, the court will choose that interpretation which leads to a logical result, and will avoid an interpretation which would render any of the provisions superfluous ***." *City of Chicago v. Strauss*, 128 Ill. App. 3d 193, 194 (1984).

¶ 19                           **Under Established Illinois Law a Mortgage Is Not**
**a Beneficial Interest in Real Property**

¶ 20      The city argues that a mortgage is a beneficial interest in real property and therefore the assignment of a mortgage is taxable under the transfer tax. We disagree. The term "beneficial interest" in Illinois law typically refers to a beneficiary's interest in a land trust. See generally *People v. Chicago Title & Trust Co.*, 75 Ill. 2d 479 (1979); 11 U.S.C. § 541(d) (2012); *Antognoni v. Basso (In re Basso)*, 397 B.R. 556 (B.A.P. 1st Cir. 2008); *Congress Talcott Corp. v. Sicari (In re Sicari)*, 187 B.R. 861 (Bankr. S.D.N.Y. 1994); *Rainsdon v. Garcia (In re Garcia)*, 465 B.R. 181 (Bankr. D. Idaho 2011). More generally, a beneficial interest relates to the party having ownership control over the property. See *Refreshment Services Co. v. Lindley*, 423 N.E.2d 1119, 1122 (Ohio 1981). A "beneficial interest" represents a form of equitable ownership and "include[s] the interest of one who is in possession of all characteristics of ownership other than legal title of the taxable property." *Id.* The holder of the beneficial interest is the effective owner of the property even though it does not possess legal title. See *Arachnid, Inc. v. Merit Industries, Inc.*, 939 F.2d 1574, 1578 n.3 (Fed. Cir. 1991) ("Equitable title may be defined as 'the beneficial interest of one person whom equity regards as the real owner, although legal title is vested in another.' " (quoting Black's Law Dictionary 1486 (6th ed. 1990))). When words of well-known legal significance are used in a statute, then absent contrary evidence, this court will assume the legislature intended that well-known legal meaning. *Harris v. Manor Healthcare Corp.*, 111 Ill. 2d 350 (1986). Therefore, we will assume the legislature intended the well-known legal meaning of the term "beneficial interest" in real property, which is equitable ownership.

¶ 21      The authorities we reviewed demonstrate that mortgages do not convey an equitable ownership in real property. A mortgage only creates a lien on the property. *Kling v. Ghilarducci*, 3 Ill. 2d 454, 460 (1954). It conveys a security interest that may be extinguished by the mortgagor paying in full any time prior to foreclosure. Restatement (Third) of Prop.: Mortgages § 3.1 (1997). Because this court uses the plain meaning of the statute if no ambiguity is present (*Quality Saw & Seal, Inc. v. Illinois Commerce Comm'n*, 374 Ill. App. 3d 776, 781 (2007)) and because there is no ambiguity in the definition of a beneficial interest in real property, this court finds that the assignment of a mortgage is not a transfer of a beneficial interest in real property. Consistent with this definition, the ALJ found that a beneficial interest in real property refers to the equitable ownership of the property, as opposed to possessing legal title. As such, he concluded that the defendants' purchase of loans and the accompanying security instruments did not convey to defendants a beneficial interest in real property because the mortgages only conveyed liens rather than granting ownership. Although a mortgage gives the mortgagee a lien interest in property which is beneficial, we encountered no authority that considered a mortgage a "beneficial interest" in real property under established law.

¶ 22      The city has advanced a novel interpretation of what constitutes a beneficial interest in real property by including mortgages in that definition. This does not comport with the popularly understood definition of a beneficial interest in real property. Indeed, the city has failed to identify *any* authority for its novel proposition that the assignment of a mortgage is equivalent to the assignment of a beneficial interest in property. To support its novel interpretation, the city has obfuscated the issue by resorting to various interpretative aids.

¶ 23      As stated earlier, the Code provides a definition of beneficial interest:

        "A. 'Beneficial interest in real property' includes, but is not limited to:

(1) The beneficial interest in an Illinois land trust;

(2) The lessee interest in a ground lease (including any interest of the lessee in the related improvements) that provides for a term of 30 years or more when all options to renew or extend are included, whether or not any portion of the term has expired; or

(3) The indirect interest in real property as reflected by a controlling interest in a real estate entity." Chicago Municipal Code § 3-33-020(A) (amended May 8, 2013).

The city has not claimed that the transactions convey any of the three listed examples of a beneficial interest in real property. Instead, the city argues that we should read a mortgage into the beneficial interest under the "including, but not limited to" language of the tax ordinance. "The legislature has on many occasions used the phrases 'including but not limited to' or 'includes but is not limited to' to indicate that the list that follows is intended to be illustrative rather than exhaustive." *People v. Perry*, 224 Ill. 2d 312, 330 (2007). This stems from "[t]he doctrine of *ejusdem generis*," which "provides that when a statutory clause specifically describes several classes of persons or things and then includes 'other persons or things,' the word 'other' is interpreted as meaning 'other such like.' [Citation.]" *People v. Davis*, 199 Ill. 2d 130, 138 (2002). Therefore, for the city to prevail on its argument to include a mortgage under the "not limited to" language, it first had to demonstrate a mortgage is similar to the listed classes of interests. See *Baksh v. Human Rights Comm'n*, 304 Ill. App. 3d 995, 1003-04 (1999) (" '[W]hen a statute lists several classes of persons or things but provides that the list is not exhaustive, the class of unarticulated persons or things will be interpreted as those 'others such like' the named persons or things.' " (quoting *Board of Trustees of Southern Illinois University v. Department of Human Rights*, 159 Ill. 2d 206, 211 (1994))).

¶ 24    The listed types of beneficial interests in the ordinance are all forms of ownership of the property. "The key elements of ownership are control and the right to enjoy the benefits of the property." *IMM Acceptance Corp. v. First National Bank & Trust Co. of Evanston*, 148 Ill. App. 3d 949, 954 (1986). Under Illinois law, a "land trust places both the legal and equitable title in the trustee." *Id.* However, the holder of the beneficial interest in the land trust is the owner of the property because the beneficiary maintains control over the property and is the party who garners benefits from the property. *Id.* The second example of a ground lease of 30 years or more with an option to renew also grants sufficient control to a lessee to constitute ownership. See *Cole Hospital, Inc. v. Champaign County Board of Review*, 113 Ill. App. 3d 96, 100 (1983) (finding that a 20-year lease with options to renew "indicate[s] sufficient incidents of ownership"). The third example explicitly lists "controlling interest in a real estate entity," indicating control over the entity owning the property. A mortgage, rather than granting ownership or control over the property, grants only a lien on the property. *Kling*, 3 Ill. 2d at 460. The city failed to cite authority for the proposition that a mortgage is a beneficial interest in real property and also failed to cite any authority indicating a mortgage conveys ownership control over the property. The authorities we reviewed indicate that a mortgage does not convey control over the property to the mortgagee. See, *e.g.*, *M. Ecker & Co. v. La Salle National Bank*, 268 Ill. App. 3d 874 (1994). The conspicuous lack of reference by authorities to a mortgage as a beneficial interest in real property, the fact that the listed beneficial interests all indicate a degree of ownership control, and the fact that a mortgage does not grant control over property leads this court to the conclusion that a mortgage is not a

beneficial interest in real property.

¶ 25                    Remedies Available to a Mortgagee in Case of Default Do Not Convert
                             a Mortgage into a Beneficial Interest in Real Property

¶ 26        The availability of remedies to a mortgagee does not make the mortgagee the owner or controller of the property. The city has advanced the argument that because the loans were already in default at the time the mortgages were acquired, the assignment of the mortgage actually conveyed a beneficial interest in real property, namely, due to the mortgagee's ability to collect rents and take possession of property upon foreclosure. We disagree. Although a mortgagee has certain rights in case of default under the terms of the mortgage, the argument that a mortgagee therefore has a beneficial interest in the property is fundamentally at odds with how mortgages are understood to function: "A mortgage creates only a security interest in real estate and confers no right to possession of that real estate on the mortgagee." Restatement (Third) of Prop.: Mortgages § 4.1 (1997). The problem with the city's novel line of reasoning is that the collection of rents provisions are simply a form of security for the repayment of the loan. "In Illinois, a clause in a real estate mortgage pledging rents and profits creates an equitable lien upon such rents and profits of the land, which may be enforced by the mortgagee upon default by taking possession of the mortgaged property." *M. Ecker & Co.*, 268 Ill. App. 3d at 879. This is consistent with how "[i]n most lien theory jurisdictions, courts *** regard the mortgagor as the owner of the rents and profits until the mortgagee takes steps to 'perfect' the assignment, such as taking possession of the property or foreclosing the mortgage." *Id.* When the "right to the rents and profits [is] contingent upon taking possession of the mortgaged premises following a default," the "assignment of rents clause [does] not convey any 'ownership' interest *** but simply grant[s] an equitable lien as additional security for the mortgage." *Id.* at 880. The assignment of rents provision in this case provided that if the loan was in default, the mortgagee would be entitled to collect rents (although for Elm State Property, the assignment of rents only allowed Elm State Property to apply those rents to the costs of maintaining the property and the remainder toward the debt it was owed). This only amounts to a lien interest in the property and failed to grant defendants control or possession of the properties. The fact that defendants were still required to acquire title to the property through the DIL or to initiate foreclosure proceedings is significant in demonstrating the lack of control defendants had with simply a mortgage's security interest in the property, even when those mortgages were in default. Therefore, the assignment of rents provisions did not grant defendants the ownership interest in the properties necessary to constitute a beneficial interest.

¶ 27        Moreover, the remedies that a mortgagee has in case of default on the mortgage can be extinguished by the mortgagor curing the default or paying off the mortgage. In that event the mortgagee has absolutely no control or rights in the property. Even when the loan is in default, "[f]rom the time the full obligation secured by a mortgage becomes due and payable until the mortgage is foreclosed, a mortgagor has the right to redeem the real estate from the mortgage." Restatement (Third) of Prop.: Mortgages § 3.1 (1997). Additionally, under Illinois mortgage foreclosure statutes the mortgagor retains control until the judicial sale and confirmation of the sale of the property. 735 ILCS 5/15-1404 (West 2014). The lien on the real estate secures the rights of the mortgagee *upon judgment of foreclosure*. 735 ILCS 5/15-1506 (West 2014). "A mortgage is a conveyance or retention of an interest in real property as security for performance of an obligation." Restatement (Third) of Prop.: Mortgages § 1.1 (1997). Even

under federal law, a mortgage is seen as a security interest and not an equitable interest. See, *e.g.*, 11 U.S.C. § 541(d) (2012) (when referring to the property in the bankruptcy estate: "property in which the debtor holds *** only legal title and not an equitable interest, such as a mortgage secured by real property, or an interest in such a mortgage, sold by the debtor"). Mortgages, then, are not reasonably understood to convey the equitable interest to the mortgagee necessary to constitute ownership control over a property. We find that the remedies available to a mortgagee when a mortgage is in default do not grant the mortgagee the degree of control necessary for ownership. Therefore, the assignment of a mortgage in default does not convey a beneficial interest in real property, and the city cannot assess a tax on the mortgage assignments to defendants.

¶ 28                    The Interpretation of the Statute Does Not Render the Exemptions Superfluous

¶ 29    The trial court determined that interpreting a mortgage as not conveying a beneficial interest in real property would render exemptions C and G (Chicago Municipal Code § 3-33-060(C), (G) (amended May 8, 2013)) superfluous and on that basis found that mortgages were beneficial interests in real property. The city made the same argument in this appeal. An interpretation that mortgages are not beneficial interests in property does not render exemptions C and G superfluous. The argument advanced by the city is predicated on fallacious logic. For transactions conveying a beneficial interest in real property, exemption C exempts "[t]ransfers in which the deed, assignment or other instrument of transfer secures debt or other obligations." Chicago Municipal Code § 3-33-060(C) (amended May 8, 2013). Exemption G exempts those "[t]ransfers in which the deed, assignment or other instrument of transfer releases property which secures debt or other obligations." Chicago Municipal Code § 3-33-060(G) (amended May 8, 2013). There are more members of the set containing transfers of beneficial interest that "secure[ ] debt or other obligation" or "releas[ing] property which secures [a] debt" than simply mortgages, meaning that if the tax does not apply to mortgages, the exemptions still have meaning because they cover a number of other transactions conveying a beneficial interest in real property and securing debt. The city's own brief admits that there are many other instruments that secure debt: "a deed can be an instrument that secures debt, just like a mortgage secures debt. [Citation.] And an assignment can likewise secure a debt, such as when there is an assignment of rents. [Citation.]" Logically following from the city's own admission, if exemptions C and G only cover instruments that secure debt that are not mortgages, they are not superfluous: they still cover a number of transactions that do transfer a beneficial interest in real property. Exemptions C and G maintain their plain meaning when a "beneficial interest in real property" (see Chicago Municipal Code § 3-33-030(A) (amended Nov. 16, 2011)) is interpreted to include equitable interests (and not to apply to mortgages). Therefore they are not superfluous.

¶ 30    This conclusion is supported by the history of the real estate transfer tax ordinance. That history demonstrates that mortgages were never taxed under the ordinance. In 1973, the tax ordinance was first passed providing that deeds were taxable. Chicago Municipal Code § 200.1-2B (adopted at Chi. City Clerk J. Proc. 6867 (Dec. 14, 1973)). It also had an exemption C to exclude deeds that secured debt. *Id.* The ordinance did not provide for the taxation of mortgages. At the time the 1973 ordinance was passed, the ordinance did not provide for a tax on beneficial interests in real property. There was a subsequent amendment to the ordinance exempting deeds securing debt and transfers of beneficial interests that secured debt. Chicago

Municipal Code § 200.1-2B (adopted at Chi. City Clerk J. Proc. 18484 (June 26, 1985)), http://chicityclerk.com/file/5988/download?token=Odn2HgN6. This was an obvious recognition that many individuals assigned deeds and assigned beneficial interests in land trusts as security for loans. Exemption C merely provided an exemption for those situations where, on the face of the transaction, there appeared to be a transfer of ownership but in reality the beneficial interests and deeds were given as security for loans. Chicago Municipal Code § 3-33-060(C) (added by Chi. City Clerk J. Proc. 27401 (Dec. 15, 1992)), http://chicityclerk.com/file/6610/download?token=arF8eGDV. The exemption is not superfluous when mortgages are not construed as beneficial interests in real property because the exemptions were written to cover other transactions.

¶ 31      Finally, we acknowledge that home rule municipalities, like Chicago, are allowed to assess a real estate transfer tax on real estate transfers including deeds, assignments of beneficial interests, and other controlling interests as those terms are defined in article 31 of the Property Tax Code, which is the Illinois Real Estate Transfer Tax Law:

> "After the effective date of this amendatory Act of the 93rd General Assembly and subject to this Section, a home rule municipality may impose or increase a tax or other fee on the privilege of transferring title to real estate, on the privilege of transferring a beneficial interest in real property, and on the privilege of transferring a controlling interest in a real estate entity, as the terms 'beneficial interest', 'controlling interest', and 'real estate entity' are defined in Article 31 of the Property Tax Code. Such a tax or other fee shall hereafter be referred to as a real estate transfer tax." 65 ILCS 5/8-3-19 (West 2014).

Therefore, if the article 31 definition of a beneficial interest includes mortgages, a plausible argument may be made that Chicago may impose a tax on the assignment of mortgages because under that definition an assignment of mortgage is an assignment of a beneficial interest. Accordingly, we look to article 31 to determine whether article 31 defines mortgages as beneficial interests.

¶ 32      The Illinois Real Estate Transfer Tax Law (Illinois Transfer Tax Law) is almost identical to the city transfer tax, and provides a definition of beneficial interest as follows:

> " 'Beneficial interest' includes, but is not limited to:
>
> (1) The beneficial interest in an Illinois land trust;
>
> (2) The lessee interest in a ground lease (including any interest of the lessee in the related improvements) that provides for a term of 30 or more years when all options to renew or extend are included, whether or not any portion of the term has expired; or
>
> (3) The indirect interest in real property as reflected by a controlling interest in a real estate entity." 35 ILCS 200/31-5 (West 2014).

The legislature, in the Illinois Transfer Tax Law, has not defined a mortgage as being a beneficial interest in real estate. The Illinois Department of Revenue interpreted the statute in 2004, concluding that apart from the three listed categories, a beneficial interest includes "any other type of interest with the right to use or occupy real property, or the right to receive income from [the] property." 86 Ill. Adm. Code 120.20(a)(2)(D) (2004). The defining characteristic of a beneficial interest in real property, if read consistently with the Illinois Transfer Tax Law as interpreted by the Illinois Department of Revenue, is having ownership

- 10 -

control over the property. When examining the Illinois Transfer Tax Law, a consistent reading of its provisions supports the Illinois Department of Revenue interpretation of a beneficial interest, which has not included mortgages and demonstrates how the imposition of the transfer tax is limited to transactions conveying title to or a controlling interest in real estate.

¶ 33　　Further sections of the Illinois Transfer Tax Law demonstrate the legislature did not intend to include mortgages in its definition of a beneficial interest in real property. Section 31-20 of the statute reads:

> "Payment of the tax shall be evidenced by revenue stamps in the amount required to show full payment of the tax imposed by Section 31-10. Except as provided in Section 31-45, a deed, document transferring a controlling interest in real property, or trust document shall not be accepted for filing by any recorder or registrar of titles unless revenue stamps in the required amount have been purchased from the recorder or registrar of titles of the county where the deed, document transferring a controlling interest in real property, or trust document is being filed for recordation. The revenue stamps shall be affixed to the deed, document transferring a controlling interest in real property, or trust document by the recorder or the registrar of titles either before or after recording as requested by the grantee." 35 ILCS 200/31-20 (West 2014).

Under this section, the statute specifies taxable documents: deeds, documents transferring controlling interest in real property, or trust documents. If the statute is read consistently as a whole and all parts are read *in pari materia*, then it is clear that the transfers of the types of interests that are taxed are the transfers of controlling, or equitable, interests in property. Documents transferring a mortgage are not listed in section 31-20 even though the section deals with instruments that must be filed in order to recognize a property interest. However, mortgages must be filed to be effective.[1] If the city were correct that a mortgage is a beneficial interest in real property, then the Illinois Transfer Tax Law would specify tax stamps proving payment should be affixed to assignments of mortgages as well, because those would be assignments of controlling interest in property. The lack of reference to mortgages, the fact that the Illinois Transfer Tax Law references types of controlling interests, and the fact that mortgages do not grant ownership control lead this court to the conclusion that mortgages are not defined as beneficial interests in real property in article 31. Therefore, article 31 does not provide the city of Chicago with authority to tax an assignment of mortgage as an assignment of beneficial interest in real property under the municipal transfer tax. 65 ILCS 5/8-3-19 (West 2014).

¶ 34　　Section 31-25 provides further proof that the critical factor for imposing the transfer tax is whether there is a transfer of a *controlling* interest in real property. The statute reads:

> "Transfer declaration. At the time a deed, a document transferring a controlling interest in real property, or trust document is presented for recordation, or within 3 business days after the transfer is effected, whichever is earlier, there shall also be presented to the recorder or registrar of titles a declaration, signed by at least one of the sellers and also signed by at least one of the buyers in the transaction or by the attorneys or agents

---

[1]See 765 ILCS 5/30 (West 2014) ("All deeds, mortgages and other instruments of writing which are authorized to be recorded, shall take effect and be in force from and after the time of filing the same for record, *** and all such deeds and title papers shall be adjudged void *** without notice, until the same shall be filed for record.").

for the sellers or buyers. The declaration shall state information including, but not limited to: (a) the value of the real property or beneficial interest in real property located in Illinois so transferred ***." 35 ILCS 200/31-25 (West 2014).

The transfer tax is imposed on deeds and documents conveying controlling interest in property, not on security interests in the property.

¶ 35 Our analysis of Illinois law leads us to the conclusion that a beneficial interest in the context of real estate means a controlling or equitable interest, such as the beneficiary in a land trust. We found no authority construing a mortgage as granting a controlling interest in real property or construing a mortgage to be a beneficial interest in real estate. Therefore, the assignment of a mortgage is not taxable as an assignment of a beneficial interest under the transfer tax. Finally, it is unnecessary for us to resolve the issue of whether mortgage assignments also fall under applicable exemptions within the transfer tax because we find that mortgages are not taxable interests under the transfer tax to begin with.

¶ 36 Therefore, this court reinstates the decision of the department of administrative hearings, and the trial court ruling is reversed.

¶ 37                            CONCLUSION

¶ 38 The judgment of the circuit court of Cook County is reversed, and the administrative decision is reinstated.

¶ 39 Circuit court reversed; administrative decision reinstated.